# KIRTON LAW FIRM

*Marlon G. Kirton, Esq.*

*Nassau County:*
*175 Fulton Avenue, Suite 305*
*Hempstead, New York 11550*
*Tel. # (516) 833-5617*
*Fax # (516) 833-5620*

December 20, 2024

VIA ELECTRONIC FILING

Hon. Paul G. Gardephe
United States District Court
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, New York 10007

**Re:** *US v. Yiyi Chen S1 23 cr. 302 (PGG)*

Dear Judge Gardephe:

      I represent Yiyi Chen in the above-referenced matter. This letter motion constitutes Ms. Chen's response to the Government's Motions in Limine filed on December 13, 2024.[1] Ms. Chen's expert notice is more than sufficient for this Court to qualify Rosemary Coates as an expert.

## TRAINING AND METHODOLOGY

      On December 4, 2024, Ms. Chen gave notice of intent to call Chinese Supply Chain Management Expert Rosemary Coates.[2] The Government argues that Ms. Chen's expert notice was insufficient. Ms. Chen disagrees.

      Ms. Coates is a published author in Global Supply Chain Management.[3] Her authorship

---

[1] *US PACER Dkt. Entry No. 92. Hereinafter Govt. Motion In Limine.*
[2] *US PACER Dkt. Entry No. 87. Hereinafter Chen Expert Notice.*
[3] *Id at 2.*

1

and publication satisfy the *Daubert publication* prong cited by the Government.[4] She authored five books on supply chain management.[5] Ms. Coates is also a licensed Customs Broker.[6] Ms. Coates's position as a Customs Broker satisfies the *Daubert prong, requiring the expert to have standards controlling the technique's operation.*[7] A Customs broker "must have expertise in the entry procedures, admissibility requirements, classification valuation and the rates of duty and applicable fees for imported merchandise.[8] There is a clear body of information about supplying goods and services to the United States. All US Customs Brokers are familiar with these rules and regulations. Customs Brokers must also pass the Customs Broker License Examination and be US Citizens.[9] These standards satisfy *Daubert's standard, requiring controlling the techniques* referenced in the Government motion.[10] There are only 14,454 licensed customs brokers in the United States.[11]

She has taught Global Supply Chain Management at California Colleges and Universities.[12] She keeps herself updated on changing standards by hosting a podcast and is a member of two expert associations, Reuters Insight and the Gerson Lehrman Group, where she consults on Supply Chain Matters.[13] Finally, she is active in the Council of Supply Chain Management Professionals, where she speaks at conferences and seminars.[14]

In addition, Ms. Coates must be familiar with Chinese and other countries' laws in order to properly advise Chinese and other foreign companies wishing to do business in the United

---

[4] *Govt. Motion In Limine* at 16; *citing Daubert,* 509 U.S. at 593-594.
[5] *Chen Expert Notice Exhibit A* at 1.
[6] *Id a*t 2.
[7] *Govt. Motion In Limine* at 16; *citing Daubert,* 509 U.S. at 593-594.
[8] www.cbp.gov/trade/programs-administration/customs-brokers/becoming-customs-broker

[9] *Id.*
[10] *Govt. Motion In Limine at 16; citing Daubert, 509 U.S. at 593-594.*
[11] www.cbp.gov/trade/programs-administration/customs-brokers/becoming-customs-broker
[12] *Chen Expert Notice Exhibit A* at 2.
[13] *Id.*
[14] *Id.*

States.

The Chen Expert Notice highlights her qualifications, training, and expertise in global supply chain issues. Her training is scholarly (Adjunct Professor), subject to a comprehensive technical examination (Customs Broker), and critiqued by her colleagues (Her Professional Associations).

## BASIS OF OPINION

Ms. Coates is based in Silicon Valley and consults with Chinese Companies that seek to export goods and services to the United States and other countries.[15] The United States is China's largest trading partner.[16] She has used her knowledge of US customs laws and standards to advise Chinese companies that want to export goods to the United States. The Defense has provided Ms. Coates with the following case-related documents: 1. The Criminal Complaint; 2. The Indictment; 3. Videos of conversations between Ms. Chen and the Government's Confidential sources; 4. The transcripts of those meetings; 5. Corporate documents the Defense obtained from Wuhan, China; 6. Ms. Chen's academic credentials that the Defense obtained from Wuhan, China; and 6. A video conference with Ms. Chen at the MDC. The Defense will continue to supply her with all relevant documents in anticipation of her trial testimony. These documents and her training and expertise in Global Supply Chain Management form the basis for her opinions.

## RELEVANCE

The Defense has a three-pronged strategy. First, it argues that there is no conspiracy involving two or more persons to violate the narcotics laws of the United States. Second, it

---

[15] *Id at 1-2*.
[16] www.wits.worldbank.org/CountySnapshot/en/CHN

argues that if there is a conspiracy, Ms. Chen is not a member, nor did she aid and abet it. Third, even if she were a member of the conspiracy, federal law enforcement entrapped her in it.

The Government does not get to pick our experts or determine what they say. She will testify based on her expertise and the evidence given to her. **The Government makes the extraordinary claim that in a case involving a China-based export company shipping goods to the United States, Ms. Chen cannot call an expert who advises China-based export companies that ship goods to the United States. Full Stop!**

Ms. Coates' testimony is related to Ms. Chen's first argument, which is that, there is no conspiracy to violate the laws of the United States. Conspiracy involves two or more persons not part of law enforcement.[17] A federal grand jury indicted four (4) persons in the superseding indictment: Ms. Chen, Mr. Wang, and two others still in China.[18] The other defendants are the corporate defendant Hubei Amarvel Biotech Co. Ltd (Hubei) and Er Yang (aka Anita) (Anita), an employee of Hubei. The Government will argue, and neither defendant will likely contest that Anita engaged in criminal activity. Ms. Coates will opine as to whether or not Hubei's actions are consistent with the standard practices of China-based export companies, to wit: efficiently shipping goods to the US for a reasonable profit without violating US law, or are their actions consistent with a company that does not operate that way.

The Defense will argue that Hubei, Mr. Wang, and Ms. Chen did not conspire with Anita to violate the laws of the United States. If Ms. Chen's argument prevails, she will be found not guilty of Counts One, Two, and Five and earn a full acquittal. All three (3) of those counts require the existence of a narcotics conspiracy.

Ms. Coates's testimony is relevant.

---

[17] *United States v. Desimone,* 119 F.3d 217, 223 (2nd Cir. 1997)
[18] *US PACER Dkt. Entry No. 79.*

## RULE 16 DISCLOSURE

The Government argues that Ms. Chen's Expert Notice does not contain Ms. Coates's approval and signature.[19] The Government's argument carries little weight. Ms. Chen moved under FRE 702 and FRE 403. Neither of which requires a signature from an expert. 702 and 403 require more transparency and detail than Rule 16.[20] Rule 16 does not require Ms. Chen to spell out the relevance of her testimony.[21] Ms. Chen's Expert Notice discloses the relevance of Ms. Coates's testimony. Ms. Chen's disclosure was so fulsome that the Government spent much ink disputing the relevance of Ms. Coates's testimony.[22] Ms. Chen discloses all of Ms. Coates's qualifications and publications, not just those 10 years or less. Once again, Ms. Chen's disclosure exceeded the requirements of Rule 16.[23] Ms. Chen disclosed all occasions she testified as an expert; exceeding the four years required under Rule 16.[24] Finally, 403 requires Ms. Chen to discuss the issue of confusion and prejudice, whereas Rule 16 does not.[25] It's impossible to argue with a straight face the following:

> " *These deficiencies are highly prejudicial because they make it impossible for the Government to challenge the reasoning by any of the proposed experts in a Daubert motion and to adequately prepare for their cross examination at trial. The deficient disclosures also make it impossible for the Government to retain its own experts to examine and potentially rebut the opinions of …..Ms. Coats…"*[26]

The Defense did not seek Ms. Coates's signature because the requirements of 702 and 403 give the Government more information than a Rule 16 disclosure. If the Court Orders a signature

---

[19] *Govt. Motion In Limine* at 18.
[20] *Federal Rule of Criminal Procedure 16*.
[21] Id.
[22] *Govt. Motion In Limine* at 19-21.
[23] *Federal Rule of Criminal Procedure 16*.
[24] *Chen Expert Notice Exhibit A*.
[25] *See, FRE 403 and FRCP 16*.
[26] *Govt. Motion In Limine* at 18-19.

5

from Ms. Coates, the Defense will oblige.

## CHINESE LAW

The Government seeks to preclude testimony mentioning Chinese laws and the lawful activities of Hubei.[27] Ms. Chen disagrees. Ms. Coates must consider Chinese law in part to determine whether or not Hubei acted in a matter consistent with a China-based export company. Ms. Coates is not an expert in Chinese export laws, but for her to consult with China-based export companies, she has to have a working knowledge of Chinese laws that touch on the export of goods. Her knowledge of Chinese law is a factor that will help her render an opinion and, therefore, cannot be precluded. The parties can discuss some limits regarding testimony about Chinese laws, but an outright ban on any discussion would prevent her from testifying before the jury.

## LAWFUL CORPORATE PRACTICES

The Government argues that Ms. Chen cannot present evidence of Hubei's lawful conduct because it is irrelevant.[28] Ms. Chen may testify in her defense. She will testify concerning the scope of her employment at Hubei and related companies. Most of her testimony will be about communicating with the other charged defendants and the DEA informants. However, to argue that her actions were reasonable and not criminal, she must refer to the patterns and practices of the company relevant to her job. She has to have some leeway to discuss how the company operated and why she thought her actions were lawful and reasonable. The parties can discuss some reasonable limits, but an outright ban on discussing any of Hubei's past lawful transactions would prevent her from exercising her right to testify before the jury and to proclaim her innocence of these charges.

---

[27] *Govt. Motion In Limine* at 21-24.
[28] Id at 24-26.

Please contact me if you have any questions or concerns.

Sincerely,

*Marlon Kirton*
Marlon G. Kirton, Esq.


cc: All Counsel via electronic filing