UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

UNITED STATES OF AMERICA,

                                                                      23 cr 302(PGG)

– against –

                                           **MEMORANDUM OF LAW**

YIYI CHEN,

                        Defendant.

-------------------------------------------------------------X

## INTRODUCTION

      This memorandum of law is submitted to support the Defendant's post-verdict motion filed on February 12, 2025.

1

# PROCEDURAL HISTORY[1]

Yiyi Chen and her co-defendant Qingzhou Wang were arrested in the Republic of Fiji on June 8, 2023. *US PACER Dkt Entry #10.* They were presented to a Magistrate in the District of Hawaii on June 9, 2023. *Id.* Her first appearance in the Southern District of New York (SDNY) was on June 26, 2023. *Id*. She appeared before this Court on June 28, 2023. The Defense filed a bail motion on June 28, 2023. *US PACER Dkt Entry #11.* The prosecution filed opposition papers the same day. *US PACER Dkt Entry #16*. The Court denied the application for bail on August 24, 2023.

A grand jury indicted Ms. Chen on three (3) separate counts: Count One Fentanyl Conspiracy in violation of 21 USC 841 (b)(1)(A). Count 2 Conspiracy to Import a Listed Chemical in violation of 21 USC 959(a). And Count Five Money Laundering Conspiracy in violation of 18 USC 1956. She was arraigned on the indictment on June 28, 2023, and pleaded not guilty. The Government filed a superseding indictment for the same counts on October 3, 2024. *US PACER Dkt Entry #79.* Ms. Chen was arraigned on the superseding indictment on November 18, 2024, and entered a plea of not guilty.

The first status conference was held on June 28, 2023. Additional conferences were held on various dates thereafter. The final pretrial conference was held on January 8, 2025. The jury trial commenced on January 13, 2025. On January 26, 2025, a jury found Ms. Chen not guilty of Count 1 but guilty of Counts Two and Five. This Court set a sentencing date of June 5, 2025.

---

[1] Information gathered from US PACER.

## SUMMARY OF ARGUMENT

The Drug Enforcement Agency (DEA) paid Confidential Source 1 (CS 1) and Confidential Source 2 (CS 2) six figures each to lure Ms. Chen out of China in a first-of-its-kind prosecution. CS 1 testified that he posed as a member of a Mexican Cartel looking to buy chemicals that he could use to manufacture fentanyl. CS 2 testified that he played the role of the boss of CS 1. However, neither told Yiyi Chen that they were members of a Mexican Drug Cartel looking to buy chemicals that could be used to make fentanyl in violation of US Narcotic laws.

Yiyi Chen is an IT professional who worked for two (2) companies owned by her boss, Fengzhi Xia. Mr. Xia assigned Ms. Chen to work as a translator for a third company he owned. She was given no operational authority. Her sole job for this temporary assignment was to work under and translate for co-defendant Wang. She received no additional compensation for this limited role, and she received no promises of extra pay or benefits from Mr. Xia, Mr. Wang, CS 1 or CS 2.

Looking at the evidence and the lack of evidence, no rational trier of fact could find that the Government proved beyond a reasonable doubt that the object of the conspiracy was to distribute 1-boc-4-AP while intending, knowing, or having reasonable cause to believe that the chemical would be unlawfully imported into the United States. Also, no rational trier of fact could find that Ms. Chen intended to promote the carrying on of a specified unlawful activity when she agreed to act as a translator between Mr. Wang and the CSs.

**STATEMENT OF FACTS**

Yiyi Chen is the co-defendant in the above-captioned matter. She's also known as Chiron Chen, her "English" name. (*Trial Tr, 1/27/2025, p.1126*) Ms. Chen, who is currently 32 years old, is a Chinese National and is fairly proficient in speaking and writing English. (*Trial Tr, 1/27/2025, p.1125*) Her parents raised her as an only child in Wuhan, China. (*Trial Tr, 1/27/2025, p.1196*)

Ms. Chen graduated from Huanggang Normal University with a degree in Broadcasting and Directing and a second degree in International Trading. She obtained a Master's in Public Communications from the University of Bologna in Italy. (*Trial Tr, 1/27/2025, p.1197*)

After receiving her Master's, Yiyi remained in Italy, working for an Export / Import chain company based in Shanghai, China. After a year with the company, in 2018, she took a new position with an Italian luxury goods company. (*Trial Tr, 1/127/2025, p.1198*)

In late 2019, at her parents' request, Yiyi moved back home to Wuhan. They desired her to move back to start a family and build a career in Wuhan. After returning to Wuhan, she initially worked at her father's place of employment. (*Trial Tr, 1/27/2025, p.1199*) In 2021, she left this position to work at Wuhan Yingbang Medical Co. Ltd. (*Trial Tr, 1/27/2025, p.1140*)

During her direct testimony, she explained that Wuhan Yingbang Medical Co. Ltd, which also does business as Wuhan Wingroup, is one of several businesses owned by investor Fengzhi Xia. Mr. Xia's other companies include Ross Technology, Frisky, and Hubei Amarvel Biotech. The Wuhan Wingroup and Hubei Amarvel Biotech share office space. Ross Technology is located 20 minutes away. Frisky is based out of Japan but has office space in Ross Technology's location in Wuhan. (*Trial Tr, 1/27/2025, pp.1127-1130*)

4

The Wuhan Wingroup is an international trade company that exports products that include active pharmaceutical ingredients and plant extracts. Hubei Amarvel Biotech, Inc. is an international exporting company. Frisky is involved in importing and exporting lithium batteries and new energy products. Ross Technology is a network technology company that serves international trade companies in China. (*Trial Tr, 1/27/2025, pp.1127-1130*)

In addition to Mr. Fengzhi Xia, other principal executives in the companies are Guang Xia, son of Fengzhi, who is responsible for purchasing, logistics, collection, and bookkeeping for Wingroup and Amarvel; and co-defendant Qingzhou Wang (a/k/a Bruce Wang), serves as Administrative Manager for Hubei Amarvel Biotech. Other employees repeatedly mentioned during the trial are Anita (a/k/a Fanny and Yang Er), a salesperson at Hubei Amarvel Biotech, and Yao Wang, Google Specialist at Ross Technology. (*Trial Tr, 1/27/2025, pp.1127-1130*) Yiyi was hired by Fengzhi Xia, first on a probationary basis in July 2021 and eventually as a full-time employee in September 2021 at Wuhan Wingroup. In December 2022, she was transferred by Mr. Xia from the Wingroup to Ross Technology. In March 2023, Yiyi was promoted to Technical Manager and, shortly thereafter, moved to Technical Supervisor. *(Trial Tr, 1/27/2025, pp.1140-1147)*

In these roles, she was responsible for hiring technology employees and building, optimizing, and overseeing the functions of the websites for the company and its clients, including Hubei Amarvel, Wuhan Wingroup, and Frisky. More specifically, Ms. Chen applied for their domain names and built their websites, including building the architecture, home page, "About" page, and "Contract" page. The salespersons for the companies were responsible for uploading product information and articles to the websites. They also had their websites for which they were responsible. Like her responsibility for the corporate websites, Yiyi also

5

assisted the salespersons in obtaining the domain names. The salespeople were also responsible for uploading content to their websites. (*Trail Tr, 1/27/2025, pp.1135-1136*)

During her tenure at Ross Technology, Yiyi was given notice of two temporary assignments to work at Amarvel Biotech to serve as a translator between Bruce Wang and a customer via video calls and in-person. The first in-person assignment was from March 18- 26, 2023; the second was dated June 2, 2023. Both assignments required her to travel from Wuhan with Mr. Wang: to Bangkok, Thailand, in March and Fiji in June.

Ms. Chen indicated that she was not trained as a translator or interpreter. (*Trial Tr, 1/27/2025, p.1187*) However, at the time of her temporary appointment, Mr. Xia shared with her that Anita's customer wanted to meet in person. Anita was pregnant, waiting to give birth at home. Mr. Xia ordered her to act as a translator for Mr. Wang because she spoke English better than anyone else in the company. (*Trial Tr, 1/27/2026, pp.1184-1185*) Based on the temporary assignment documents given to her, Yiyi understood that her role was strictly that of an interpreter. She had no responsibility or authority to make decisions regarding business matters such as pricing, negotiation, and product quantities. (*Trial Tr, 1/27/2025, pp.1182; 1184; 1190-1191*)

Ms. Chen's role as an interpreter was also confirmed by the Government's Confidential Sources employed by the DEA. During direct testimony, CS Rodriguez gave an affirmative response when the Court asked if he understood that Ms. Chen was translating for Mr. Wang. (*Trial Tr, 1/17/2025, pp.478-479*) In response to a question during his direct, CS Rodriquez confirmed that he asked Ms. Chen to translate what he said to Mr. Wang. In video recordings, you can hear Ms. Chen expressed to the CS that she translated his comments to Mr. Wang. You can also hear her translating to Mr. Wang. (*Trial, Tr, 1/17/2025, pp.482-483*) Throughout the trial

6

testimony, it is clear that Ms. Chen is serving as a translator. (*Trial, Tr. 1/21/2025, pp.638, 644; Trial Tr. 1/22/2025, p.665*) During the alleged conspiracy, Ms. Chen did not make deals and decisions on behalf of Hubei Amarvel.

Ms. Chen was indicted for conspiracy based on her participation in meetings between Mr. Wang, Anita and the Confidential Sources. Yiyi admits to attending various video calls and the two in-person meetings. However, in none of these gatherings did Yiyi demonstrate any behavior or knowledge that would lead one to believe that she conspired with anyone involved in the transaction to export Fentanyl precursor chemicals to the United States. Anita shared sketchy information about the meeting in preparation for the translator role. She never shared her clandestine dealings with her clients, who we now know were Confidential Sources (CS) for the US Government. This fact is obvious when, in response to a question from CS Rodriguez regarding the transport of Fentanyl into the US, Ms. Chen responded by saying: "*For this topic, Anita didn't…communicate with you? (Trial Tr, 1/17/2025, p.491)* Likewise, in her testimony, Ms. Chen indicated that she did not thoroughly review the customer information and communication about the negotiation that Mr. Wang forwarded to her. (*Trial Tr, 1/27/2025, p.1185*) This shows not only her lack of knowledge but also her lack of interest in the transaction at hand. A person willing to participate in a conspiracy would show interest in educating themselves on the details of the conspiracy.

In further rebuttal to the Government's implication that Ms. Chen is knowledgeable about the industry, a review of several of her comments uttered during the two in-person meetings in Thailand and Fiji presents the reality – she is naïve to the industry and clueless about the transactions negotiated by Anita. Yiyi was given a list prepared by Anita to share with the client at the meeting in Thailand. (*Trial Tr, 1/17/2025, pp.491-492*) However, in direct testimony, CS.

Rodriguez said he understood Anita "*was in charge of… the chemicals*". ( Trial Tr, 1/21/2025, pp.536-537)

In further direct testimony, it becomes even more evident that Chen's knowledge about the transaction as it relates to a violation of the laws of the United States precludes her from understanding that the information she was translating between Mr. Wang and the Confidential Sources involved illegal activity. On no occasion, in-person or via video, did any of the key players involved in the negotiations of chemicals to the US share with Ms. Chen that the purchase and transport of the fentanyl precursor chemicals was illegal. (*Trial Tr, 1/27/2025, pp.1194-1195, 1240-1241, 1244-1245*) This shows not only her ignorance of US law but also her ignorance of Hubei's international export operations.

Lastly, testimony from the Confidential Sources shows that they initiated video calls, not Yiyi. During his direct testimony, CS Rodriguez admitted that he initiated a video call between Xia, Wang, Chen, and CS Guillermo that took place on May 9, 2023. (*Trial Tr, 1/21/2025, p.576*) In her testimony, Chen indicated that one of the CSs initiated two video meetings where she served as a translator. (*Trial Tr, 1/27/2025, p.1190*)

Likewise, the "infamous chart" was posted in the group chat by the Government's Confidential Source, not Ms. Chen. In his own words, CS Garcia confirms that he posted into the group chat the confidential chart containing the word "fentanyl" that Anita shared with him. (*Trial Tr, 1/16/2025, pp.221-227, 296-297; Trial Tr, 1/21/2025, p.551*)

8

# ARGUMENT

## Case Law

Ms. Chen moves for a judgment of acquittal pursuant to Rule 29 ( c ) of the Federal Rules of Criminal Procedure (FRCP). The evidence must be viewed in the light most favorable to the government and deferring to the jury's assessments of the witnesses' credibility. *United States v. Parkes,* 497 F.3d 220, 225 (2nd Cir. 2007). Courts will sustain a jury's verdict so long as any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *Parkes at 225 citing Jackson v. Virginia,* 443 US 307, 319 (1979). However, although a jury is permitted to enter an unreasonable verdict of "not guilty," it does not have the power to enter an unreasonable verdict of guilty. *Jackson v. Virginia, 443 US 307, 319 (1979) (citing Carpenters & Joiners v. United States,* 330 US 395, 408 (1899)).

District Courts may not credit unreasonable inferences. *United States v. Quattrone,* 441 F.3d 153, 169 (2nd Cir. 2006). Acquittal is required if a rational juror would have to speculate to find the essential element of intent beyond a reasonable doubt. *United States v. Stewart,* 305 F. Supp. 2nd 368, 370. (SDNY 2004). While the district court defers to the jury's determinations of witness credibility, it must review each inference from the witness testimony for reasonableness. *Id.* at 378. *See United States v. Torres,* 604 F.3d 58, 69 (2nd Cir. 2010). If there is evidence that "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Coplan,* 703 F.3d 46, 69 (2nd Cir. 2012).

In the alternative, Ms. Chen moves pursuant to Rule 33(a) of the FRCP for a new trial. A motion for a new trial may be granted in the interests of justice. *United States v. Genao,* F. Supp 2d 224, 226 (SDNY 2005). District courts are given broad discretion to set aside a jury verdict

9

and grant a new trial to avert a perceived miscarriage of justice. *United States v. Ferguson*, 246 F.3d 129, 133 (2nd Cir 2001). A new trial is proper if a genuine concern is that an innocent person may have been convicted. *Parke*s at 232. Although the burden rests with the defense, the district court may consider the credibility of the witnesses. *Genao* at 226.

**POINT I -The Government failed to prove the Object of the Conspiracy for Count Two.**

Count Two requires the Government to prove that Ms. Chen conspired with either Anita or Mr. Wang to manufacture and distribute 1-boc-4-AP, intending, knowing, and having reasonable cause to believe that the chemical would be unlawfully imported into the United States. *Jury Instructions,* Page 39. The Government had to prove, inter alia, that the object of the conspiracy was to unlawfully manufacture and distribute 1-boc-4-AP intending, knowing, and having reasonable cause to believe that 1-boc-4-AP would be unlawfully imported into the United States. *Jury Instructions*, Page 40.

The Government presented no evidence that Ms. Chen intended, knew, or had reasonable cause to believe that 1-boc-4-AP would be unlawfully imported into the United States. Neither of the CS witnesses expressly stated that they were members of a Mexican Drug Cartel. Neither CS witness told Ms. Chen that they were not licensed to manufacture fentanyl in the United States. Neither CS witness said to Ms. Chen that by merely acting as a translator in these conversations, she was violating the narcotic laws of the United States.

Second, neither Anita nor Mr. Wang said to her that the CS witnesses were Mexican Cartel members. Neither Anita nor Mr. Wang told Ms. Chen that both CSs were unlicensed manufacturers of fentanyl in the United States. Finally, neither Anita nor Mr. Wang said to her

that by merely acting as a translator in the meetings and conversations, she was violating the narcotics laws of the United States.

The Government presented no evidence that Ms. Chen affirmatively knew that 1-boc-4-AP was a chemical that they hoped to purchase from Hubei Amarvel.

The trial jury found Ms. Chen guilty of Count Two and checked yes to question 6 and found that Ms. Chen knew or had reason to know that 1-boc-4-AP would be used to manufacture fentanyl. Ms. Chen is a Chinese national, and there is no proof that she has ever traveled to the United States. The Government presented evidence at trial that she read a series of articles regarding fentanyl in May of 2023. *GX 251-253*. The Government argued that her review of the articles proved her knowledge that she was violating the laws of the United States. (*Trial Tr 1/28/2025, p. 1321-1322*. However, Ms. Chen's testimony is that one of the articles had an American perspective, and one had a Chinese perspective, and she did not know what to believe. (*Trial Tr, 1/27/2025, p.1196).* The real issue for the jury is whether or not she knew, in this transaction, that she was violating the laws of the United States. She answered the question in the negative as she testified about the meeting in Fiji. She did not believe that she violated any US laws while acting as a translator between Wang and the CSs. *Trial Tr, 1/27/2025, p.1248).* The inferences made by Ms. Chen in her testimony and the Government in its argument are nearly equal. Ms. Chen's inferences carry more weight because she testified as to her knowledge of fentanyl in general and her knowledge of fentanyl relative to this transaction. The Defense argues that if the evidence "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Coplan,* 703 F.3d 46, 69 (2nd Cir. 2012). The Defense moves for a judgment of acquittal on Count Two pursuant to FRCP 29 ( c ).

**POINT II - The Government failed to prove the Object of the Conspiracy for Count Five.**

The object of the conspiracy charged in Count Five is to "transport, transmit and transfer, and attempt to transport, transmit and transfer a monetary instrument and funds from a place in the United States to and through a place outside of the United States, in an amount exceeding $10,000, with the intent to promote the carrying on of specified unlawful activity" to wit felony narcotics offenses involving controlled substances and listed chemicals. *Jury Instructions,* Pages 48-49. The Government failed to prove that Ms. Chen had "the intent to promote the carrying on of a felony narcotics offense.." *Id.*

The arguments and reasoning are the same: Neither of the CS witnesses expressly stated that they were members of a Mexican Drug Cartel. Neither CS witness told Ms. Chen that they were not licensed to manufacture fentanyl in the United States. Neither CS witness said to Ms. Chen that by merely acting as a translator in these conversations, she was violating the narcotic laws of the United States.

Second, neither Anita nor Mr. Wang said to her that the CS witnesses were Mexican Cartel members. Neither Anita nor Mr. Wang told Ms. Chen that both CSs were unlicensed manufacturers of fentanyl in the United States. Finally, neither Anita nor Mr. Wang said to her that by merely acting as a translator in the meetings and conversations, she was violating the narcotics laws of the United States.

Third, the funds were transferred in a traceable medium (crypto), and the client received a payment receipt. This conduct is inconsistent with a person looking to conceal an illegal narcotics transaction.

The Jury convicted Ms. Chen of Count Five. The Defense argues that the Government failed to prove the object of the conspiracy. The Government did not prove that Ms. Chen intended to promote the carrying on of a specified unlawful activity when she agreed to act as a translator between Mr. Wang and the CSs.

**POINT III** – Ms. Chen moves for a new trial for Count Two and Count Five.

Ms. Chen is innocent of both Counts in the indictment**.** Both counts require Ms. Chen to conspire with either Anita or Mr. Wang. *Jury Instructions* Pages 24,25 and 48. Yet the Government spent much time connecting Ms. Chen to web pages she had not created and did not recognize. . The Government never argued that Hubei Amarvel was a co-conspirator. The Government produced evidence that had no connection with Anita or Wang to prove her involvement in the conspiracy. The website evidence unconnected to Anita and Wang has no bearing on Ms. Chen's guilt. The evidence is essentially irrelevant.

The Defense also already argued in Points I and II the lack of evidence concerning her guilt. Ms. Chen's testimony supplies the rest. Ms. Chen only went back to Wuhan because she was temporarily unemployed in Italy, and her parents wanted her to start planning for a family. She remained in Wuhan because of the 2020 pandemic. Ms. Chen began working for Mr. Xia's companies in 2021 and received several promotions. Ms. Chen understood that because of the suspension of the Google account, the word fentanyl had to be removed, and she attempted to resolve the situation. Ms. Chen had no clients when she spent two months in sales. She had minimal experience in the sales side of the business. She was an IT person with English language proficiency who was asked to be a translator for some international clients. There is no proof that Ms. Chen is guilty of any of the crimes for which she was convicted. The Defense moves for a new trial on Counts Two and Five pursuant to FRCP 33(a).

## CONCLUSION

For all the reasons stated above, the Defense requests that the Court grant our motion for a judgment of acquittal pursuant to FRCP 29 (c) or for a new trial pursuant to FRCP 33 and/or for other relief the Court may deem and proper.

Dated: February 12, 2025
Hempstead, New York

                                                Yours etc.

                                                s/Marlon G. Kirton
                                                Kirton Law Firm
                                                175 Fulton Avenue, Suite 305
                                                Hempstead, NY 11550
                                                (516) 833-5617 (ph)
                                                (516) 833-5620 (fax)
                                                kirtonlawfirm@gmail.com email